644 So.2d 451 (1994)
John W. MOODY and Alvin A. Garcia, Jr.
v.
STATE of Mississippi.
No. 91-KA-00588.
Supreme Court of Mississippi.
October 20, 1994.
*452 Jim W. Rose, Albert Necaise, Gulfport, for appellant.
Michael C. Moore, Atty. Gen., Jean Smith Vaughan, Sp. Ass't Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and ROBERTS, JJ.
DAN M. LEE, Presiding Justice, for the Court:

I.
John W. Moody and Alvin A. Garcia, Jr. were convicted of aggravated assault, robbery and grand larceny following jury deliberation of less than one hour and sentenced by the Circuit Court of Hancock County, Mississippi, to a total of twenty-three (23) years each under the supervision of the Mississippi Department of Corrections. They appeal and, as their principal issue, claim they were denied the effective assistance of counsel during the trial and at sentencing. From our review of the totality of the circumstances, we conclude defense counsels' efforts are both deficient and prejudicial and limit our discussion to that issue, upon which we reverse and remand for a new trial.

II.
All charges arise out of the same series of events beginning at about 3:00 o'clock a.m. on April 24, 1990, on the Ulman Avenue Pier in Bay St. Louis. Donald Ray Sander, Sr., a 61-year-old retired and disabled refrigeration, air conditioning, and heating repairman, was on the pier in the process of placing his crab nets in the bay when he was attacked by two men. He was robbed and thrown from the pier by the two assailants. Sander's wallet, food stamps, keys and knife were taken and his blue van and contents were stolen. He was left for dead in the waist-deep water. He described his attackers as two white men, one big, called John, and one small. He watched from under the pier as the two drove away in his van eastbound for Pass Christian. Sander managed to walk out of the shallow water to the rocks and, from there, he went to a nearby home for the elderly. The police were summoned, and he was taken by ambulance to the hospital. He was treated for head lacerations and bruises and released.
Later that same morning, he was driven by Officer Van Fayard of the Bay St. Louis Police Department by Garcia's residence where he was asked to identify two white males standing on the steps of the house. Sander tentatively identified the smaller of the two, but not the other.
Garcia, the smaller, and Moody were arrested and searched. Food stamp coupon booklets, a $10 food receipt from Charter Food Store in Pass Christian, and a small calculator were taken from Garcia's pockets. At trial, Sander identified the food stamp coupon booklets and calculator as his property. The $10 receipt was identified by the clerk who received a $10 food coupon plus a *453 $5 food stamp tip in return for purchases made by Garcia and Moody that same morning.
Later that morning, Sander's van was found abandoned on the railroad tracks approximately four blocks from where the two were arrested.
Moody retained his trial counsel when the attorney who represented him at the preliminary hearing withdrew. Garcia retained the same defense counsel just two days prior to trial because his court-appointed attorney urged him to engage in plea bargaining. Different counsel was employed to handle this appeal.

III.
Moody and Garcia list twenty-one trial counsel deficiencies and resulting prejudice:
(1) He did not raise any objections to the three count indictment or proof therein on double jeopardy grounds.
(2) He failed to challenge Garcia and Moody's arrest.
(3) He failed to move to suppress the out-of-court identification of the defendants.
(4) He did not test the admissibility of items seized from Garcia that allegedly incriminated him and which were introduced into evidence without objection although a basis for attacking the legality of the arrest and search existed on lack of probable cause grounds.
(5) He did not file a motion to suppress the in-court identification by the victim although the out-of-court identification of the defendants had arguably been unduly suggestive in that there was no line up and the victim was taken to the home of one of the defendants to observe the two men as they were being questioned by the police before their arrest and just a few hours after the crime was committed.
(6) He failed to object to the aggravated assault and grand larceny charge and conviction on double jeopardy grounds. On the contrary, he conceded the point while arguing the issue of armed robbery versus robbery saying, "Now, the other two charges of grand larceny and the aggravated assault, I can see."
(7) He neither filed a motion to exclude Moody's previous conviction of second degree theft nor requested the Judge to perform the balancing test outlined by this Court in Peterson v. State, 518 So.2d 632 (Miss. 1987), and McInnis v. State, 527 So.2d 84 (Miss. 1988), which, if successful, would have presented Moody with an opportunity to testify without fear of being impeached by that conviction.
(8) He failed to interview, subpoena, or call to testify available witnesses who could corroborate the appellants' whereabouts on the night in question.
(9) He did not inquire into the defendants' backgrounds, family and personal circumstances, employment associations, and related matters to any significant extent.
(10) He did not ask the jury one single voir dire question although the prosecutor conducted an in-depth voir dire of the jury.
(11) He reserved opening statement but never gave one even though the prosecuting attorney gave a detailed and incriminating opening statement.
(12) He did not question Mr. Sander during his testimony regarding Sander's lengthy conversation with Garcia before trial in the hallway at the courthouse. Sander did not recognize Garcia until the prosecution pointed out to Mr. Sander that it was Garcia. Mr. Sander brought out during his testimony that he was unaware that the defendants were out of jail on bail.
(13) He failed to establish by way of documentation or witnesses that Garcia was receiving food stamps at the time of the robbery.
(14) He failed to object to Mr. Sander's hearsay testimony which was unduly prejudicial. The victim testified, in regard to the personal items that were recovered, "They [police] told me they got that out of a dumpster or something that these boys threw them in."
(15) He failed to object to the testimony of Mr. Sander wherein he stated, in regard to the in-court identification and the out-of-court *454 identification of John Moody, "I would say 10 to 15, maybe 20 percent of identity, I can identify him" and "I told you one I could possibly identify [reference to Garcia]. I saw him good. The other one, 10, 20, 15 percent maybe."
(16) He introduced into evidence the unduly suggestive and highly prejudicial identification photographs from the jail taken on the night of their arrest of the defendants in handcuffs.
(17) Both defendants were urged by trial counsel not to testify or present any defense because, if they did, they would surely be put into jail. The defendants wanted to testify.
(18) He failed to present several witnesses and character witnesses who could have otherwise been called to testify, including Garcia's father, who was present at his son's house the night and early morning when the police came to question Garcia.
(19) Trial counsel, according to Moody and Garcia, never made any independent investigation, did not interview any of the state's witnesses, and never inspected the various scenes discussed at the trial, although he received discovery from the State providing him with names and locations.
(20) He neglected to bring his trial notes to court for his closing argument, informing the jury he had left them at his office.
(21) Trial counsel was unable at sentencing to articulate any factors in favor of the defendants that would mitigate against sentences that totaled twenty-three years for both, even though: (a) both men were under twenty-two years of age; (b) defendant Moody was married; (c) both had children; (d) Garcia had no prior felony convictions; (e) Garcia had suffered a severe physical injury when younger resulting in psychological problems; (f) both had a history of steady employment; (g) neither had graduated from high school; and, (h) [sic] there were witnesses willing to provide testimony for them at sentencing.
Counsel's failure to question the jury panel during voir dire, failure to make an opening statement, failure to call any defense witnesses, and closing argument admission that he failed to bring his trial notes to court highlight this claim. Defense counsel also put in evidence a picture of his clients made at the police station while they were handcuffed. On these allegations, we question the rebuttable presumption that counsel is effective. The record confirms these allegations. Following jury examination by the Court and the State, defense counsel announced: "I have no voir dire for the jury."
During the State's opening statement, defense counsel made this revealing objection:
MR. OLIVER: Your Honor, I have to object to that. These are facts which have never been put into evidence.
MR. HARKEY [ASSISTANT DISTRICT ATTORNEY]: That's true.
THE COURT: He's simply stating an outline of the evidence as he views it to be. Overruled.
Following the State's opening statement, the Court asked defense counsel:
THE COURT: Do you wish to reserve [opening statement]?
MR. OLIVER: Yes, sir.
Defense counsel never made an opening statement leaving the incriminating statement of the State unchallenged.
The victim, during direct examination, was asked if he could identify Garcia and Moody as his two assailants. His reply was "[I] possibly could identify the young guy. The big guy, ... . I would say 10 to 15, maybe 20 percent of identity, I can identify him." Questioned further, the victim responded: "Well, I told the officers I can identify one." This line of questioning continued:
Q ...  you've indicated that these two gentlemen seated at defense counsel table are the two individuals who attacked you; is that correct?
A I've indicated, yes. Possibly the second guy, but not full identity; the first guy, yes.
....
MR. HARKEY: Your Honor, I would like the record to reflect he's identified Alvin Garcia.
This entire effort to have the victim identify Moody and Garcia did not raise a single *455 objection from defense counsel. Cross-examination bolstered the questionable identification:
[BY DEFENSE COUNSEL]
Q When did you get a good look at the young man so that you could make this identification?
....
Q ... Is it a possibility this is him or are you positive it's him?
... .
THE WITNESS: Yes, sir.
Q You are 100 percent positive 
A Yes.
Q  it was this man right here?
A Yes.
Defense counsel pushed the identification point further:
Q Can you identify him? Can you identify him today?
A Yes, he's the boy. He's had a shave and took it all off and freshened up. I'm not telling you 100 percent. I cannot be 100 percent of the second person.
Identification by the victim was strengthened by defense counsel placing in evidence photographs of his clients made while they were handcuffed at the police station.
Following conviction, both Garcia and Moody testified in support of their supplemental motion for a new trial. Garcia testified:
A ... I went to open the door and there was an elderly man standing there, so I held the door open, you know. He thanked me, you know. I told him, no problem... . and the door opened again and it was this same man standing there and he engaged in a conversation with us, you know. He told me about refrigeration and stuff and I was talking about I was in global cathodic protections and so forth and I explained to him what that was and went through some of the procedures, and suddenly the DA and Mr. Burleson come walking up the steps and snagged him to the side and told him that that was Mr. Garcia you're talking to; and he just started more or less hollering, you know, I didn't know he was out on bond; why didn't ya'll tell me he was out on bond. You know, I didn't recognize him because I just seen him one time in the picture, and the picture  whatever somebody done to him, it  you know 
Q But he didn't recognize you either?
A No, sir, he didn't recognize me either.
Q Did you tell Mr. Oliver [trial defense counsel] about that incident?
A Yes, sir, I did.
Q Did you tell Mr. Oliver that this man who is accusing you of beating him up talked to you and did not recognize you?
A Yes, sir, I did. He laughed about it.
Q Mr. Oliver laughed about it.
A Yes, sir. He seen it with his own eyes, because, you know, he  he  when the door opened, he seen us standing out there, you know, because he was just coming out the door when this incident happened; and he said, can you believe that; he couldn't even recognize you. I said, he ain't ever seen me before.
... .
Q Did Mr. Oliver ever make the statement that you couldn't even recognize the man in the courtroom and now you're saying that he did it, or words to that effect, that he failed to recognize you?
A No, sir, he didn't.
Neither Moody nor Garcia testified at trial. They now claim they were advised by defense counsel that their testimony would be detrimental to their case. The State elected not to call defense counsel as a witness at the hearing on the supplemental motion for a new trial. Unfortunately, there is nothing in the record of the trial judge's interrogating the accuseds concerning their right to testify. In Culberson v. State, 412 So.2d 1184, 1186-87 (Miss. 1982), this Court advised:
We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does *456 not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant's waiver of his right to testify should ever arise in the future.
Moody claims his attorney told him not to testify because he had a prior felony conviction which could be used by the State to impeach his testimony. Again, there is no record of the trial judge making, or defense counsel requesting, a determination that the probative value of the prior conviction outweighed its prejudicial effect as required by Peterson v. State, 518 So.2d 632, 636 (Miss. 1987).
We note that witnesses were available in the courtroom, Garcia's father and aunt, and others, who could have been subpoenaed to testify to the whereabouts of the two at the time the crimes were committed. Both claimed alibis but offered no testimony to avail themselves of that defense. At sentencing, defense counsel made only a brief general plea for mercy. Available for use in mitigation, but not used, was the fact that both were under 22 years of age at the time of trial. Garcia had no prior convictions and suffered a history of psychological problems. Moody was married and the father of three children. There is no record that the sentencing judge requested a presentence investigation prior to imposition of the sentence.

IV.
Moody and Garcia have the burden of proving not only that counsel's performance was deficient, but also that they were prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In a 1993 decision, this Court restated the Strickland requirements as adopted and applied to cases in this state:
To successfully claim ineffective assistance of counsel the Defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674] (1984), and adopted by this Court. Alexander v. State, 605 So.2d 1170, 1173 (Miss. 1992); Knight v. State, 577 So.2d 392, 394 (Miss. 1991); Barnes v. State, 577 So.2d 840, 841 (Miss. 1991); McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990); Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987), aff'd after remand, 544 So.2d 834 (Miss. 1989); Stringer v. State, 454 So.2d 468, 476 (Miss. 1984), cert. denied, 469 U.S. 1230 [105 S.Ct. 1231, 84 L.Ed.2d 368] (1985). The Strickland test requires a showing of (1) deficiency of counsel's performance (2) sufficient to constitute prejudice to the defense. McQuarter, 574 So.2d at 687. The burden to demonstrate both prongs is on the defendant. Id; Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1984), reversed in part, affirmed in part, 539 So.2d 1378 (Miss. 1989), and he faces a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance. McQuarter, 574 So.2d at 687; Waldrop, 506 So.2d at 275; Gilliard v. State, 462 So.2d 710, 714 (Miss. 1985). The defendant must show that there is a reasonable probability that but for his attorney's errors, defendant would have received a different result in the trial court. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992); Ahmad v. State, 603 So.2d 843, 848 (Miss. 1992).
This Court must determine whether counsel's performance was both deficient and prejudicial based upon the totality of the circumstances. Carney v. State, 525 So.2d 776, 780 (Miss. 1988); Waldrop, 506 So.2d at 275; Read v. State, 430 So.2d 832, 839 (Miss. 1983). Our scrutiny of counsel's performance must be deferential. Ahmad, 603 So.2d at 848. If defendant raises questions of fact regarding the deficiency of counsel's conduct or prejudice to the defendant, he is entitled to an evidentiary hearing on ineffective assistance of counsel. Alexander, 605 So.2d at 1173; Leatherwood, 473 So.2d at 971. Where this Court determines defendant's counsel was ineffective, the appropriate remedy is to remand for a new trial. Nicolaou, 612 So.2d at 1086.
Stringer v. State, 627 So.2d 326, 328-29 (Miss. 1993).
*457 Following a review of the totality of defense counsel's performance, we conclude it was both deficient and prejudicial.
REVERSED AND REMANDED FOR A NEW TRIAL NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by ROBERTS and SMITH, JJ.
McRAE, Justice, dissenting:
There has been no showing in the record that defense counsel's efforts were so deficient that their conduct met the Strickland v. Washington test; however, the majority, based on its own subjective experiences, concludes that he was ineffective. As the majority reverses the trial judge's decision, it fails to comply with this Court's standard of review. Accordingly, I dissent from the majority opinion which upholds Moody's and Garcia's claims of ineffective assistance of counsel.
On January 24, 1992, this Court remanded the defendants' appeal to the Circuit Court of Hancock County with leave to file an amended motion for a new trial, thereby holding the appeal in abeyance until the supplemental motion was heard. On May 4, 1992, the circuit court heard the supplemental motion for a new trial where the newly retained defense counsel argued that the representation of counsel at trial violated the criminal defendants' Sixth Amendment right to effective counsel. This motion was denied on the same day.
When a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings. Omni Bank of Mantee v. United Southern Bank, 607 So.2d 76, 82 (Miss. 1992). "Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong." Tricon Metals v. Topp, 516 So.2d 236, 238 (Miss. 1987); Brown v. Williams, 504 So.2d 1188, 1192 (Miss. 1987). This Court must examine the entire record and accept:
that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact ...
Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1985). Finally, when the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses. Bryan v. Holzer, 589 So.2d 648 (Miss. 1991); Bell v. Parker, 563 So.2d 594 (Miss. 1990). We are not allowed to pick and choose only those facts necessary to reach a preferred conclusion. To the contrary, it is incumbent upon this Court to consider the entire record and to accept all the facts and reasonable inferences which support the lower court's finding.
At the supplemental hearing, the circuit court judge, after hearing all the offered testimony, denied the motion and held:
Even though a considerable amount of testimony has been offered this afternoon concerning what could have been presented during the course of the trial, in the main, most of it is in the nature of character testimony. There was a time lapse of some four to four and a half hours that it was contended that Mr. Moody and Mr. Garcia were on their foot journey to Pearlington. These facts if presented to the jury in my view would have had absolutely no effect whatsoever on the outcome of the trial ... Ineffective counsel is based upon a different outcome in a case.
The lower court judge weighed all the evidence presented, and it is not for this Court to determine that his decision, absent an erroneously applied legal principle or abuse of discretion, should not be given credence.
The majority bases its opinion on several factors that, when taken together, constitute ineffective assistance of counsel. The fact that defense counsel made no opening statement was one such factor. There has, however, been no showing that such action was not strategic. "Decisions of counsel are presumed to be strategic." Handley v. State, *458 574 So.2d 671, 684 (Miss. 1990). Many times opening statements are not made, especially in situations where, as in the case at hand, there exists an eye witness who identifies one of the defendants as one of the perpetrators and the goods found on the defendants as his own.
The majority admonishes defense counsel for failing to adequately question the jury. The record does, however, indicate that the trial judge and the district attorney closely questioned the potential jurors. Why must a defense counsel ask redundant questions? Is it not feasible to believe that at some point in the voir dire no further questions need be asked? In any event, the majority does not show how the failure to voir dire the jury prejudiced the criminal defendants as required in Strickland v. Washington.
Moreover, the majority concludes in one sentence that the second prong of Strickland v. Washington was met. It is obvious that no prejudice exists since the majority is unable to specifically show how Moody and Garcia were prejudiced. The majority states that "[f]ollowing a review of the totality of defense counsel's performance, we conclude it was deficient and prejudicial." To the contrary, the trial judge specifically found that since the victim identified one of the defendants as a perpetrator and there existed a witness who recognized the defendants as being those who attempted to use food stamps which were registered to the victim, the character testimony that was offered at the hearing would have in no way aided them in their defense. The defendants did not offer an alibi witness who could have actually placed the defendants in his or her presence during the entire time in question. There is absolutely no showing in the record of exactly how defense counsel's performance prejudiced the defendants, and accordingly, the trial judge's order denying the motion should be affirmed.
When this Court finds that an attorney was deficient in his representation, we are in effect holding that the attorney was negligent. That being the case, this court is notifying the Mississippi Bar that the attorney should be suspended from his or her practice pursuant to Broome v. Mississippi Bar, 603 So.2d 349 (Miss. 1992). In Broome, this Court suspended an attorney from practicing law for thirty days because of a single incident of simple negligence. Broome, 603 So.2d at 355. A serious problem arises when this Court on its own says without any real proof that an attorney was ineffective.
ROBERTS and SMITH, JJ., join this opinion.