[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 497 
¶ 1. Bashir Al-Fatah, also known as Fasaha Al-Fatah, was convicted of burglary of a dwelling and aggravated assault with a deadly weapon in the Circuit Court of Lowndes County. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections for the burglary conviction and ten years for the aggravated assault conviction with the sentences to run concurrently. Aggrieved, he asserts the following issues on appeal:
 I. THE TRIAL COURT ERRED IN FAILING TO GRANT AL-FATAH'S MOTION FOR A DIRECTED VERDICT BECAUSE THE EVIDENCE OF GUILT OF AGGRAVATED ASSAULT WAS INSUFFICIENT AS A MATTER OF LAW.
 II. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A VIDEOTAPE RECORDING *Page 498 
OF THE SEARCH OF AL-FATAH'S HOME.
 III. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT.
 IV. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PRIOR CONVICTIONS OF AL-FATAH'S WITNESS UNDER MISSISSIPPI RULES OF EVIDENCE 609.
 V. THE PROSECUTION'S MISCONDUCT DEPRIVED AL-FATAH OF A FAIR TRIAL.
 VI. AL-FATAH'S CONVICTION IS VOID BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
Finding no error, we affirm.
 FACTS
¶ 2. On the night of November 16, 1999, Dearius Hayes and his sister Shameka were asleep in the early morning hours in their home in Columbus, Mississippi. Dearius testified that he was awakened by a shock on his right shoulder to find two men in the house. Dearius let out a yell which woke Shameka. Both men were dressed in black from head to foot and were described as being dressed like "Ninja warriors" or martial artists. One of the men had a stun gun and Dearius struggled with him. During the struggle, Dearius was able to lift his mask and recognized the man as Seitu Al-Fatah, the father of Bashir. The other man was holding Shameka on the couch to keep her from seeing what was happening with her brother. Shameka testified that she recognized both men as being Seitu and Bashir Al-Fatah due to their voices and demeanor, since both lived in her neighborhood.
¶ 3. Dearius testified that he was able to get a metal object which turned out to be a knife away from Seitu, and that he saw Bashir begin to pull something out that looked like a sword. Dearius testified that he was able to get the sword out of Bashir's hand but at some point he was cut by either the sword or knife by grabbing them around the blades. Shameka tried to use the phone to call the police but the line had been unplugged. The intruders left after Dearius had taken the sword and knife from them, and the police were then called. Dearius's hand was bandaged by paramedics, but he would later have to go to the hospital for stitches when it would not heal correctly. When the police arrived, Dearius gave them a glove which had come off during the struggle, the knife, and the sword. A flexible baton was also found on the floor. The Hayeses gave the names of Seitu and Bashir Al-Fatah and a search warrant was obtained and was executed later that morning. At the Al-Fatah home, a stun gun was found as was a holder that fit the sword.
 ANALYSIS I. DID THE TRIAL COURT ERR IN FAILING TO GRANT AL-FATAH'S MOTION FOR A DIRECTED VERDICT BECAUSE THE EVIDENCE OF GUILT OF AGGRAVATED ASSAULT WAS INSUFFICIENT AS A MATTER OF LAW?
¶ 4. Al-Fatah asserts that the trial court erred in failing to grant his motion for a directed verdict because the evidence of guilt of aggravated assault was insufficient as a matter of law. Al-Fatah bases his assertion on the testimony of Dearius Hayes that he did not know which weapon caused his injuries and he did not remember seeing Bashir Al-Fatah with the knife. Al-Fatah therefore argues that the State failed to prove beyond a reasonable doubt that he committed aggravated assault as defined by statute. *Page 499 
¶ 5. A motion for a directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss 1993). "If there is sufficient evidence to support a verdict of guilty, this Court will not reverse." Meshell v. State, 506 So.2d 989, 990 (Miss. 1987). See also Haymond v. State, 478 So.2d 297, 300 (Miss. 1985); Fairley v. State, 467 So.2d 894, 902 (Miss. 1985). "We proceed by considering all of the evidence — not just that supporting the case for the prosecution — in the light most consistent with the verdict." Benson v. State, 551 So.2d 188, 192-3 (Miss. 1989). "We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence." Id. at 193. This Court should reverse only where, "with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." Alexander v.State, 759 So.2d 411, 421 (¶ 23) (Miss. 2000) (quoting Gossett v.State, 660 So.2d 1285, 1293 (Miss. 1995)).
¶ 6. The State put on proof that Bashir Al-Fatah acted with his father Seitu in entering the Hayes home and attacking Dearius. Dearius saw both weapons but could not say for certain which one injured his hand. Both the knife and the sword were introduced into evidence as was the stun gun used to awaken Dearius. Also, a scabbard found at Al-Fatah's home that perfectly fit one of the edged weapons left behind at the Hayeses' home was introduced. Shameka Hayes testified that she knew both of the intruders and that she saw some of the struggle between the men. Miss. Code Ann. § 97-3-7 (Rev. 2001) states the following:
 A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.
¶ 7. The State showed that both men had entered the Hayes home in the middle of the night clothed in black and were armed with various edged weapons as well as a baton and a stun gun. It is for the jury to determine whether the weapons were deadly under the aggravated assault statute. Walls v. State, 759 So.2d 483, 487 (¶ 11) (Miss.Ct.App. 2000). The State showed that Dearius was injured during a struggle with Al-Fatah and the evidence was sufficient that a reasonable and fair-minded juror could find Bashir Al-Fatah guilty. This issue is without merit.
 II. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE A VIDEOTAPE RECORDING OF THE SEARCH OF AL-FATAH'S HOME?
¶ 8. Al-Fatah asserts that the trial judge erred in admitting a videotape of the search of his home. Al-Fatah argues that the videotape showed various martial arts weapons and that since several of them were introduced into evidence, the video was needlessly cumulative evidence. Also, Al-Fatah asserts that the video's probative value was outweighed by its prejudicial effect of showing all of the combative equipment in his house. The trial court reasoned that the video was admissible because it helped identify the defendant as well as tie his identity in with the assault, since the intruders were dressed in all black like martial artists.
¶ 9. "The relevancy and admissibility of evidence are largely within the *Page 500 
discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence.Id. The trial judge in this case found that the items in the video identified Al-Fatah with the crime under Mississippi Rules of Evidence 404(b). As clearly stated by M.R.E. 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 10. "The admissibility of videotapes is considered under the same analysis as the admissibility of photographs." Berry v. State,703 So.2d 269, 278 (¶ 19) (Miss. 1997) (citing Holland v. State,587 So.2d 848, 864-65 (Miss. 1991)). Photographs that are gruesome or inflammatory and lack an evidentiary purpose are always inadmissible as evidence. McFee v. State, 511 So.2d 130, 134 (Miss. 1987).
¶ 11. Like the case in Holland, the video in this case was duplicative of other evidence that was admitted at trial. If it was allowed at all, it should have been redacted in order to show only the items connected directly to the incident at the Hayeses' home. The video in Holland was found to be harmless error because the content along with the other evidence rendered it non-prejudicial. Holland, 587 So.2d at 864. Similarly in Berry, the video was found to be harmless because "on balance, it does not appear that the cumulative nature of this particular video would cause the jury to give undue credit to the heinous, atrocious, and cruel nature of this crime." Berry, 703 So.2d at 278 (¶ 21). As in the above cases, the admission of the video in this case was harmless as its cumulative nature did not prejudice Al-Fatah.
 III. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO AMEND THE INDICTMENT?
¶ 12. Al-Fatah asserts that the trial court erred in allowing the State to amend the indictment to specify that Dearius Hayes was injured by "a knife or sword" rather than simply a knife. The trial judge found that the amendment was one of form and not substance and that the State could call the "sharp-edged instrument" a knife or a sword. An indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment.Griffin v. State, 584 So.2d 1274, 1276 (Miss. 1991). However, amendments as to the substance of the charge must be made by the grand jury. The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made. Id.
¶ 13. Al-Fatah was not hampered in his defense of claiming that he was not at the Hayeses' home or that he was mistakenly identified by the victims. The amendment was one of form in clarifying the terms for the weapons used to cut the victim. Dearius Hayes testified that he did not know whether it was the knife or the sword that cut him in the struggle at his home. There was no error in the amendment of the indictment. This issue is without merit.
 IV. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF PRIOR CONVICTIONS OF AL-FATAH'S WITNESS UNDER MISSISSIPPI RULES OF EVIDENCE 609? *Page 501 
¶ 14. Al-Fatah asserts that the trial court erred in admitting evidence of the prior convictions of his only witness, Ernie Vidrine, who testified that he had previous convictions of burglary of a dwelling and receiving stolen property. Vidrine testified that the Hayeses were making the whole story up and that they were attempting to get revenge against Al-Fatah. According to Vidrine, Dearius Hayes cut himself on a flower pot and concocted the whole incident.
¶ 15. In order to determine if prior convictions should be admitted under M.R.E. 609, the Mississippi Supreme Court has stated that the following factors should be examined by the trial judge in order to weigh the probative value of convictions against their prejudicial effect:
 (1) The impeachment value of the prior crime. (2) The point in time of the conviction and the witness' subsequent history. (3) The similarity between the past crime and the charged crime. (4) The importance of the defendant's testimony. (5) The centrality of the credibility issue.
Peterson v. State, 518 So.2d 632, 636 (Miss. 1987).
¶ 16. Although Vidrine's conviction of burglary first appears to show relatively little impeachment value, the trial judge found that it was admissible by the State to show that Vidrine was in jail and did not have personal knowledge of the relationship between Al-Fatah and the Hayeses and was only allowed into evidence after Vidrine admitted that he did not know Al-Fatah. The point in time of Vidrine's last conviction was 1993 and he was sentenced to serve eight years with the Mississippi Department of Corrections. This was important because he would have been in jail when the alleged incident occurred in November 1999. The similarity of the crimes would not be a factor because Vidrine was not the defendant. Vidrine's testimony was directly opposite to all of the other evidence admitted at trial. Although he was the only witness for the defense, he did not explain the physical items found at the Hayes home nor how he received his information about Hayes' relationship with Al-Fatah. The importance of Vidrine's credibility is central to Al-Fatah's defense, but the trial judge found that Vidrine's prior record was admissible to impeach his statements which directly contradicted the victim of the crime.
¶ 17. If the witness to be impeached through the admission of prior convictions is not a party, any prejudice to that non-party witness is irrelevant as a non-party can suffer no prejudice. Young v. State,731 So.2d 1145, 1151 (¶ 39) (Miss. 1999). In Young, the Mississippi Supreme Court emphasized that, where a party is being impeached through the use of prior convictions, a Peterson-type balancing test "is necessary to prevent a defendant from being convicted on the basis of a prior bad act rather than on the evidence presented at trial regarding the present crime." Young, 731 So.2d at 1150. However, when the witness being impeached is not a party, that potential problem does not exist and therefore, even where the non-party witness being impeached is one party's primary or sole witness, evidence of a prior conviction of that witness must be admitted if the requirements of Rule 609(a) and (b) are met. Id. at 1150-51. Vidrine was not a party, and the trial court was within its discretion in allowing the State to impeach his statements with his prior record. This issue is without merit.
 V. DID THE PROSECUTION'S MISCONDUCT DEPRIVE AL-FATAH OF A FAIR TRIAL? *Page 502 
¶ 18. Al-Fatah asserts that the trial court erred in allowing prosecutorial misconduct which deprived him of a fair trial. In its cross-examination of defense witness Vidrine, the prosecutor attempted to elicit testimony from Vidrine that he was in custody under indictment and that he held a grudge against the Lowndes County District Attorney's Office. Al-Fatah objected to the line of questioning and the trial court sustained the objection. In closing argument, the prosecutor made the statement that the witness was in jail for "another reason" and again the trial judge sustained Al-Fatah's objection and instructed the jury to disregard the remark.
¶ 19. "This Court assumes that juries follow the instructions given to them by the trial court." Collins v. State, 594 So.2d 29, 35 (Miss. 1992). "Attorneys are to be given wide latitude in making their closing arguments." Wilcher v. State, 697 So.2d 1087, 1110 (¶ 39) (Miss. 1997) (citing Jimpson v. State, 532 So.2d 985, 991 (Miss. 1988);Johnson v. State, 477 So.2d 196, 209 (Miss. 1985); Shook v. State,552 So.2d 841, 851 (Miss. 1989)). "The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment." Johnson v. State,477 So.2d 196, 210 (Miss. 1985). The trial judge in this case did just that, and found that the comments by the prosecutor were not prejudicial to the extent that a mistrial was in order. This issue is without merit.
 VI. WAS AL-FATAH'S CONVICTION VOID BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 20. Al-Fatah asserts that he received ineffective assistance of counsel and that his conviction is therefore void. In order to prove ineffective assistance of counsel, Al-Fatah must establish by a preponderance of the evidence that (1) counsel's performance was defective, and (2) that defect was so prejudicial as to prevent Al-Fatah from having a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Moody v. State, 644 So.2d 451, 456 (Miss. 1994). Al-Fatah faces a strong yet rebuttable presumption that counsel performed adequately, and he must show a reasonable probability that barring counsel's errors, the result of the trial would have been different. Moody, 644 So.2d at 456. This Court looks at the totality of the circumstances, with deference towards counsel's actions, to find a factual basis for the claim. Id.
Should we find that Al-Fatah's counsel was ineffective, the appropriate remedy is remand for a new trial. Id.
¶ 21. Al-Fatah argues that his trial counsel was deficient in several areas, including failing to note the race of the jurors on the jury list for the record, failure to challenge several jurors for cause, and failing to make several objections to questions which Al-Fatah asserts were leading during direct examination of the State's witnesses. The State argues that Al-Fatah's counsel was using trial strategy when it failed to object to leading questions and that failure to note race on the jury list does not in itself indicate constitutionally ineffective representation. Also, the State asserts that Al-Fatah has failed to meet the second prong of the Strickland test and show that the ineffective assistance, if any, was so prejudicial as to prevent Al-Fatah from having a fair trial.
¶ 22. Failing to note the race of the jurors on the jury list does not raise an issue under Batson v. Kentucky, 476 U.S. 79 (1989), nor does it rise to the level of ineffective assistance of counsel under any authority shown to this Court. Al-Fatah asserts that he was prevented from making *Page 503 
a Batson argument due to the lack of race on the jury list, but he fails to cite any authority which supports this position. "Failure to cite authority engenders a procedural bar, and this court will not review the unsupported issues. Davis v. State, 750 So.2d 552, 561 (¶ 37) (Miss.Ct.App. 1999) (citing Williams v. State, 708 So.2d 1358, 1361 (¶ 12) (Miss. 1998)).
¶ 23. Al-Fatah also asserts that trial counsel failed to challenge several jurors for cause due to inferences that they knew Al-Fatah or one of the officers that took part in the investigation. The jurors were asked if their situations would affect their ability to be fair and impartial to which they responded in the negative. The Fifth Circuit Court of Appeals considers an attorney's actions during voir dire to be a matter of trial strategy, which "cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be `so ill chosen that it permeates the entire trial with obvious unfairness.'" Burns v. State, 813 So.2d 668, 675-76 (¶ 22) (Miss. 2001) (citing Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983))). Al-Fatah has failed to make such a showing.
¶ 24. Al-Fatah asserts that trial counsel's failure to object to leading questions on direct examination by the State amounts to ineffective assistance of counsel. The procedure used by one attorney is not to be judged by the "hindsight and method another attorney might have used" under similar circumstances. Parham v. State, 229 So.2d 582, 583 (Miss. 1969). "This Court must apply a heavy measure of deference to counsel's judgments." Wiley v. State, 517 So.2d 1373, 1379 (Miss. 1987). Al-Fatah has failed to show that his counsel's performance was ineffective or that he was prejudiced as required for him to show under the test set forth in Strickland. Al-Fatah was entitled to a fair trial not a perfect one, nor was he entitled to a constitutionally errorless counsel. Cabello v. State, 524 So.2d 313, 315 (Miss. 1988). This issue is without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OFCONVICTION OF COUNT I BURGLARY OF OCCUPIED DWELLING WITH A DEADLY WEAPONAND SENTENCE OF TWENTY YEARS; AND COUNT II AGGRAVATED ASSAULT WITH ADEADLY WEAPON AND SENTENCE OF TEN YEARS ALL IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONCURRENTLY WITH COUNT I ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING AND SOUTHWICK, P. JJ., BRIDGES, LEE, MYERS, CHANDLER AND GRIFFIS,JJ., CONCUR. McMILLIN, C.J., AND IRVING, J., CONCUR IN RESULT ONLY.