# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CP-00162-SCT

*FRANK YOUNG a/k/a "BO"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/95 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED 1/21/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/26/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## SUMMARY

¶1. On June 13, 1995, a Coahoma County grand jury indicted Frank Young, A/K/A "Bo," for murder in the death of Carolyn Phillips. Young pled not guilty to the charge of murder and trial was held on October 30, 1995 through November 1, 1995. A jury in Coahoma County Circuit Court convicted Young of murder on November 1, 1995.

¶2. Young filed timely motions for JNOV and in the alternative for a new trial. The trial judge denied Young's motions on December 12, 1995. Young was sentenced to serve a term of life imprisonment in an institution under the supervision and control of the Mississippi Department of Corrections.

¶3. Young filed a motion to reconsider the trial judge's order denying his motions for JNOV or in the alternative a new trial. Young's attorney claimed he inadvertently included incorrect materials with his original motion. The trial judge granted Young's request to reconsider and then again denied Young's motions. Young filed a notice of appeal to this Court and was determined to be entitled to an appeal *in forma pauperis*.

¶4. Young's fifteen assignments of error can be broken down into six points of error.

> **I. THE TRIAL JUDGE'S EXCLUSION OF A PRIOR CONVICTION OF WILLIAM ROSS, THE STATE'S KEY WITNESS, UNDER MISSISSIPPI RULE OF EVIDENCE 609 WAS ERROR.**
>
> **II. THE TRIAL JUDGE ERRONEOUSLY EXCLUDED EVIDENCE POINTING TO WILLIAM ROSS AS THE TRUE KILLER OF CAROLYN PHILLIPS.**
>
> **III. THE VERDICT WAS AGAINST THE OVERWHELMING SUFFICIENCY AND WEIGHT OF THE EVIDENCE.**
>
> **IV. THE TRIAL JUDGE IMPROPERLY INSTRUCTED THE JURY AND DID NOT PROPERLY CONSIDER THE COMPETENCY OF THE INDIVIDUAL JURORS WHEN THE JURY WAS IMPANELED.**
>
> **V. THE INCLUSION OF A BLACK POLICE DETECTIVE AS THE FOREMAN OF PREDOMINANTLY BLACK JURY PREJUDICED YOUNG AND IMPROPERLY INFLUENCED THE OTHER JURORS.**
>
> **VI. ADMISSION OF COMMENTS OR THREATS BY YOUNG TOWARDS CAROLYN PHILLIPS SEVERAL DAYS BEFORE THE MURDER WAS IMPROPER.**

## FACTS OF THE CASE

¶5. Carolyn Phillips' six year old son, Terrance Phillips, testified he found his mother dead in her bed on the morning of the shooting. He further testified "Earnestine, Barry, Larry, and 'Bo' (the defendant)" were at the house when he went to sleep before the shooting.

¶6. Harvey Granger testified Terrance Phillips ran out of the house crying the morning of May 10, 1995 and told him his mother was dead. Granger took Terrance back into the house and discovered Carolyn's body. Granger called 911 and waited until the police and ambulance personnel arrived.

¶7. Ambulance worker, Billy Pinion, Jr., testified he and his partner arrived at the scene and found a young boy crying (Terrance) standing next to an older man (Granger). The older man directed Pinion to the house where he found Carolyn Phillips dead inside.

¶8. Captain Tim Fortenberry testified initially defendant Young, William Ross and Barry Johnson were suspects in Carolyn's murder. Ross was dropped as a suspect after another interview. Fortenberry testified blood samples taken from Johnson and Young showed both were ABO type O, the same blood type found at the scene. On the direction of the District Attorney's office, no DNA tests were requested of the blood samples taken at the scene or from Johnson or Young. Fortenberry further testified after more investigation, Ross and Johnson were no longer considered suspects.

¶9. Dr. Steven Timothy Hayne was accepted as an expert in anatomic, clinical and forensic pathology. Dr. Hayne testified he conducted an autopsy at the request of the Coahoma County Coroner's office on May 10, 1995. Dr. Hayne testified he found two gunshot wounds, one to the temple area and one to the chin. He further testified both wounds occurred at about the same time and although the wound to the temple

was the cause of death, the wound to the chin could have easily caused death in and of itself. He could not fix an exact time of death.

¶10. Sharon Banks testified that, on the night of the shooting, she, Young, Ross and Edilisa Franks were at her house watching movies. At some point around 1:00 a.m., Ross and Young left the house and returned about 5 to 10 minutes later. She further testified she and Young slept together that night and he did not leave the house again until the next morning. Banks also stated from time to time Ross would drive Young's car.

¶11. Mary Allen testified the day of the shooting Terrance and Carolyn picked her up and she spent the day at Carolyn's house from 12:00 p.m. to 10:00 or 10:30 p.m. Allen testified during the day several people came in and out of Carolyn's house. Groups of people were playing cards in the kitchen and watching TV in the living room. At some point a fight broke out between Barry Johnson and several others.[1] Johnson was bloodied in the fight and Carolyn gave him a towel to help him clean up after the fight. Things quieted down and Johnson and Carolyn resolved the disagreement that led to the fight. Both Ross and Young were present at Carolyn's house during the day and the evening. Carolyn's ex-husband, Terry Phillips, came by the house and spoke with Carolyn at some point during the day. Allen left the house around 10:30 p.m. with Earnestine Badger, leaving Carolyn, Ross, Young and Terrance at the house. When Allen left the house, Carolyn was alive.

¶12. Carolyn's brother, Vincent Sims, testified he came over to Carolyn's house the night of the shooting and left around 12:00 a.m. He also testified Barry Johnson and Carolyn had not been involved in a fight that day. At the time he left, Carolyn was alive.

¶13. Barry Johnson testified he came over to Carolyn's house the night of the shooting to talk to her about some missing money. An argument about this missing money led to the fight between Johnson and the others. Carolyn broke up the fight, helped Johnson clean up and then she and Johnson parted on friendly terms. Johnson left the house about 10:30 that night.

¶14. Earnestine Badger, Young's sister, testified she was present at Carolyn's house the night of the shooting. She further testified Young was "a little bit jealous when he saw her (Carolyn) go in with Barry."

¶15. Steve Byrd of the Mississippi Crime Laboratory testified the two bullets taken from Carolyn Phillips' body were fired from the same gun and the gun was a .38 and not a .9 millimeter.

¶16. William Ross took the stand and testified he and Young were at Carolyn's house the day and night of the shooting. Ross further testified he and Young went back to Carolyn's house after both left earlier in the evening. Ross stated Young wanted to spend the night at Carolyn's house. While the two were there with Carolyn, Ross said Young told him to go out and start the car. As he was leaving, Ross heard two shots. These shots, he testified, were the shots that killed Carolyn. Ross stated Young put a pillow over her face and shot her.

¶17. On cross-examination Ross was asked about a prior conviction for burglary. Outside the presence of the jury, the judge made a determination under Mississippi Rules of Evidence 609 and 403 that the prejudicial effect of the evidence of the burglary conviction outweighed its probative value. The judge instructed the jury to disregard the question and answer. Ross also testified on cross he did not shoot Carolyn himself, but restated Young had done the shooting. Ross further stated he and Young were at Carolyn's house for about 30 to 40 minutes before the shooting took place and they left just after the

shooting.

¶18. Officer Robert Taylor took the stand and discussed an interview with Young. During this interview, Young stated he had pawned a .9 millimeter pistol and did not have another gun. Young also stated he was not jealous of Johnson's relationship with Carolyn.

¶19. Officer Danny Hill testified he advised Young of his Miranda rights before questioning and Young waived his rights. During his statement, Young stated he would kill four people before the year was over, but said he was only joking. Hill testified Young was initially a suspect, but Ross's statements about Young were the primary basis for Young's remaining a suspect in Carolyn's murder.

¶20. Throughout the State's case in chief, several references were made to an incident the Friday night before Carolyn was killed. In this incident, Young was alleged to have pointed a gun at Carolyn and threatened to kill her. Young's attorney asked Officer Fortenberry about any evidence that pointed to Young as Carolyn's killer other than statements by Ross. Outside the presence of the jury, a discussion was held on the admissibility of this evidence.

¶21. In an earlier motion in limine, Young's attorney asked to have any evidence of this Friday night incident excluded. The State argued the evidence was admissible under Mississippi Rule of Evidence 404(b) as relevant to show Young's intent to kill Carolyn. The judge ruled Young's statement "he ought to shoot that mother fucker in the head" (referring to Carolyn) was not admissible, but the State could reference the Friday night incident to show Young had possession of a gun at the time.

¶22. After Young's attorney opened the door to the Friday night incident with Officer Fortenberry, several other witnesses testified about the incident that night. All testified Young had a gun and used it to threaten Carolyn.

¶23. In the defendant's case in chief, Young did not himself testify, but instead called two witnesses.

¶24. Edilisa Franklin testified she, Banks, Young and Ross were at Young's house the night of the shooting. She testified Ross left the house alone about 11:00 p.m. and Young remained until around 1:00 a.m. when he left to buy some chicken. She stated Ross returned to the house just after Young left to buy chicken and Young returned about 1:05 a.m. Franklin said she left the house around 1:30 a.m. and did not see any of the three again that night.

¶25. Tachara Haggen testified sometime around 2:00 a.m. to 3:30 a.m., Barry Johnson came by her house to ask Haggen's father to drive him to Memphis. Haggen said when she told Johnson to leave, she heard him say "that bitch is going to pay for saying I stole her money."[(2)]

¶26. At the end of Haggen's testimony, the defense rested.

¶27. In rebuttal the State called three witnesses and then rested.

¶28. The jury convicted Young and he was sentenced to life imprisonment. Young timely appealed.

## DISCUSSION OF LAW

## I. THE TRIAL JUDGE'S EXCLUSION OF A PRIOR CONVICTION OF WILLIAM

**ROSS, THE STATE'S KEY WITNESS, UNDER MISSISSIPPI RULE OF EVIDENCE 609 WAS ERROR.**

¶29. Young argues the trial judge erred in excluding evidence of William Ross's prior conviction for burglary.

¶30. On cross-examination of William Ross during the State's case in chief, Young's attorney asked Ross if he had ever been convicted of a felony. Ross answered, "No, sir." After this question and answer, the trial judge held a discussion in chambers on the admissibility of Ross's prior conviction for impeachment purposes. The trial judge ruled under Mississippi Rules of Evidence 609 and 403, Ross's prior conviction was inadmissible. The judge found the prejudicial effect of the testimony outweighed its probative value. The judge instructed the jury to disregard the question about Ross's prior felony conviction and Young's attorney continued with his cross-examination.

¶31. Mississippi Rule of Evidence 609(a) states:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

Miss. R. Evid. 609(a).

¶32. The comment to Mississippi Rule of Evidence 609 describes the procedure involved in determining the admissibility of a prior conviction under this rule.

> Under Rule 609(a) crimes are divided into two categories for purposes of impeachment. The first category, 609(a)(1), contains felony-grade convictions. Felony-grade convictions may be used for impeachment purposes, provided the court first determines that the probative value of admitting evidence of the crime outweighs its prejudicial effect. Under Rule 609(a)(1) the trial judge must make an on-the-record determination that the probative value of the prior conviction outweighs the prejudicial effects before the witness may be impeached.

Miss. R. Evid. 609 cmt.

¶33. Ross's conviction was for a burglary committed three or four years before Young's trial.[3] Ross pled guilty to the burglary charge. Young's attorney argued Ross was the State's key witness and the only witness linking Young directly to the crime. As such, Ross's credibility as a witness was the central issue in Young's case. The State countered Young's argument by admitting Ross's testimony was essential to the State's case and to allow evidence of Ross's conviction would be so prejudicial to the State that it would outweigh its probative value. The State argued:

> Our response on that issue, your Honor, to the merits of counsel's argument is that the fact that he's the only witness is what makes that question so much more prejudicial to the State. That makes its prejudice outweigh its probative value, because I have acknowledged, too, that he is the State's case which is scary, but I mean he is. I think without that -- without that question he has already impeached

himself to some degree even on direct examination. So I mean, you know, I don't know that it would be near as much benefit to counsel to ask it as it is harm to the State to ask it.

¶34. The trial judge accepted the State's argument and declared evidence of Ross's prior conviction to be inadmissible.

¶35. In most cases a Mississippi Rule of Evidence 609 prejudicial/probative determination is used to assess the effect of evidence of a *defendant's* prior conviction. *See* *Wilcher v. State*, 697 So. 2d 1087, 1094 (Miss. 1997) (discussing use of prior bad acts of defendant); *Tillman v. State*, 606 So. 2d 1103, 1107 (Miss. 1992) (addressing situation similar to case *sub judice* where defendant Tillman wanted to use prior burglary convictions of two co-defendants for impeachment purposes and use was denied). In these cases the focus of the prejudicial/probative determination is whether the use of the impeachment evidence will prejudice the party defendant. A determination in these cases is necessary to prevent a defendant from being convicted on the basis of a prior bad act rather than on the evidence presented at trial regarding the present crime.

¶36. Young's case is distinguishable. Young sought to use evidence of Ross's prior burglary conviction for general impeachment purposes under 609(a)(1). Ross's conviction met the basic requirements of 609(a)(1). Evidence of the crime was elicited at trial -- the State admitted Ross had been convicted. The crime, burglary, was punishable by imprisonment for more than one year. The final step required was an on the record prejudicial/probative determination by the trial judge concerning the admissibility of the evidence.

¶37. In *Peterson v. State*, 518 So. 2d 632 (Miss.1987), this Court held Mississippi Rule of Evidence 609(a)(1) requires the trial court to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction. *Peterson*, 518 So. 2d at 636. The Court listed several factors that should be considered by the trial court when weighing the probative value against the prejudicial effect:

> (1) The impeachment value of the prior crime.
>
> (2) The point in time of the conviction and the witness' subsequent history.
>
> (3) The similarity between the past crime and the charged crime.
>
> (4) The importance of the defendant's testimony.
>
> (5) The centrality of the credibility issue.

*Id.* at 637.

¶38. In *Hubbard v. State*, 437 So. 2d 430, 433-34 (Miss. 1983), this Court stated Article 3, Section 26, of the Mississippi Constitution grants and guarantees a criminal defendant the right to confront witnesses against him. *See also* *Stromas v. State*, 618 So. 2d 116, 121 (Miss. 1993) (stating criminal defendant is entitled to fully confront every witness against him). The right of confrontation "extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." *Myers v. State*, 296 So. 2d 695, 700 (Miss. 1974).

¶39. Considering the above cases, it was an abuse of discretion for the trial judge to have excluded evidence of Ross's prior conviction under Mississippi Rule of Evidence 609. Although the trial judge did not directly address the five factors listed in **Peterson**, it is apparent from the discussion in chambers that the judge did conduct a balancing test considering at least some of the factors. What the trial judge failed to consider is because Ross is not a party in this case, any prejudice to him is irrelevant. *See **Wilcher**, 697 So. 2d at 1143* (Sullivan, P.J., dissenting) ("MRE 609(a)(1) refers to the 'prejudicial effect on a party.' Since [the witness] was not a party to the suit but merely a witness, the prejudicial effect on his testimony is irrelevant. In other words, when a defendant or party to a suit . . . testifies, and a prior conviction is sought admissible for impeachment purposes, the court must weigh the probative effect of the prior conviction and its prejudicial effect on the `party.' However, a non-party may not be prejudiced. Therefore, the extortion conviction should have been admitted.").

¶40. The State's argument that because Ross was its primary witness any prejudice to him would unduly prejudice the State's case is flawed. Mississippi Rule of Evidence 609 exists to protect testifying parties from being unduly prejudiced through admission of prior convictions. Since Ross is not a party, any prejudice to him is irrelevant. To deny Young the right to fully explore this aspect of Ross's credibility is to deny him the right to fully confront the witnesses against him. This point is particularly true since the State and Young were both in agreement Ross was the only witness directly linking Young to the crime. It was an abuse of discretion for the trial judge not to allow evidence of Ross's prior conviction.

¶41. On this issue we reverse Young's conviction and remand this case for a new trial with instructions to allow Young to introduce evidence of Ross's prior conviction for burglary for impeachment purposes.

¶42. Young's other assignments of error have no merit and because the 609 issue is determinative we decline to address these other issues.

## CONCLUSION

¶43. The trial judge abused his discretion when he failed to allow evidence of William Ross's prior conviction for burglary into evidence. For this reason, the trial court's decision is reversed and this case is remanded for a new trial with instructions to allow Young to use Ross's prior burglary conviction for purposes of impeachment.

¶44. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS AND McRAE, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**


**SMITH, JUSTICE, DISSENTING:**


¶45. In his brief, Young, the *pro se* Appellant, asserted numerous assignments of error by the lower court. However, Young has failed to support any of his contentions with authority. We have continually considered issues of error not supported by citation or authority as abandoned. **Thibodeaux v. State**, 652 So.2d 153, 155 (Miss. 1995). Further, it is the duty of an appellant to provide authority in support of an assignment of error. **Hoops v. State**, 681 So.2d 521, 526 (Miss. 1996); **Kelly v. State**, 553 So.2d 517,

521 (Miss. 1989); *Smith v. State*, 430 So.2d 406, 407 (Miss. 1983); *Ramseur v. State*, 368 So.2d 842, 844 (Miss. 1979). Stated differently, we are "not bound to address assertions or error where a party fails to cite caselaw in support of their argument." *Nicholson ex rel. Gollott v. State*, 672 So.2d 744, 751 (Miss. 1996); *Hewlett v. State*, 607 So.2d 1097, 1107 (Miss. 1992). Because Young has failed to meet the burden of providing authority to support his assignments of error, he should be procedurally barred. *Drennan v. State*, 695 So.2d 581, 585-86 (Miss. 1997).

¶46. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. From the testimony of several witnesses, it is not clear exactly who was fighting whom and what started the fight. What is clear is several men attacked Johnson in Carolyn's home and afterwards Carolyn helped Johnson clean up. The dispute may or may not have been over money owed to Carolyn. In some versions Johnson took money owed to Carolyn, leading Carolyn to have her brothers confront him. In other versions, there was no dispute between Johnson and Carolyn.

2. The implication Young tried to make was that Johnson was referring to Carolyn and the earlier fight. Haggen, however, said nothing about to whom Johnson was referring.

3. Exactly how long before the trial is not provided in the record.