# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-01206-SCT

*JAMES ROGERS a/k/a JAMES WALTER RODGERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2000 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN DAVID WEDDLE |
| | ANGELA NEWSOM SNYDER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/27/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/18/2001 |

### BEFORE McRAE, P.J., MILLS AND WALLER, JJ.

### McRAE, PRESIDING JUSTICE, FOR THE COURT:

¶1. On February 17, 2000, a Lee County jury found James Rogers[1] guilty of murder, and he was subsequently given a life sentence. Rogers appeals and raises five issues: whether the trial court erred by granting the State's motion in limine to prohibit all mention of the conviction of a State's witness; whether Rogers failed to receive a fair trial due to the State's improper remarks during its closing arguments; whether Rogers was prejudiced by the trial court's granting the State's motion in limine to prohibit all mention of Jessie Johnson's charge of capital murder; whether the trial court erred by refusing Rogers's proposed jury instruction D-6A, on malice aforethought; and whether the jury's verdict was against the overwhelming weight of the evidence. Finding no reversible error, we affirm the judgment of the trial court.

## FACTS

¶2. On September 21, 1998, James Rogers ("Rogers") accompanied his mother to buy a washing machine to replace an old one. Rogers lived with his mother, Edna Rogers ("Edna"). His nephew, Terry Rogers ("Terry") did not live far from his mother's house. Jessie Johnson ("Jessie") and his father, Arthur Danny "Doc" Johnson , had been at Terry's trailer the night before, and the three had been drinking beer, injecting crystal methamphetamine, smoking marijuana and eating sedatives, known as Valiums.

¶3. After arriving home from buying the washing machine, Rogers asked Jessie and Arthur to help him move the washer into his mother's home. The three men had to tear some of the trim off the door frame to get the washing machine into the back of the house. They rested and then sat in the living room, drinking beer and

eating sandwiches. On the couch, Rogers had a gun which he moved so that Terry would not find it. Rogers feared what Terry would do if he found the gun because of Terry's drug use.

¶4. At this point, the stories diverge. Rogers claims that the deceased, Walter Stolz ("Stolz"), came up to his house. Rogers did not know Stolz, but had seen him two or three weeks before, when Johnson had brought him to his home to show his mother some jewelry. Stolz sat down on the couch next to Rogers. Next, Johnson and Stolz got into a violent argument. Johnson stated that he had told Stolz not to come there unless he was with him, and Stolz became angry at this. It was at this point that Rogers got his gun, which he claims slipped from under his grip, and accidentally fired and killed Stolz. Rogers stated, "[A]nd I was coming around, trying to back the hammer on it, my thumb slipped or the gun slipped or something slipped in my hand and 'bam.'" Rogers claims that he picked up the gun because he feared for his life and for the life of his mother. Rogers was sixty-years-old at the time of trial, and his mother was eighty-three-years old. Rogers stated his intentions were to get the three men out of his mother's house because he did not want any trouble. Edna corroborated her son's testimony. Rogers further testified that the gun did not fit his hand and that it might have been a woman's gun. The murder weapon a .22 caliber EIG pistol, was introduced into evidence by the State, and it was marked and received.

¶5. Jessie and Johnson told a different story at trial. Jessie stated that Rogers told Stolz to come into the house. Jessie stated that Stolz said, "You remember me, he said we had some-a few beers together the other night at Lonnie's Lounge." Then, according to Jessie, Rogers replied, "You don't know me and here's what I've got for people like you." At that point, Rogers reached under "a pillow or blanket or whatever" and shot Stolz. Johnson corroborated his son's testimony and stated that Rogers said, "You don't know me and I don't know you." Jessie and Johnson agreed that they ran out of the house after the shooting.

¶6. An officer with the Lee County Sheriff's Department, Ronnie Burroughs, testified that when he arrived at the scene, Rogers was standing on the front porch; Stolz was sitting up against the couch; and the gun was also on the couch.

¶7. The defense called Petra Crisostomo, who met Stolz when she was the manager of the Lake and Park Inn. After she had known Stolz for about a year, she began selling rings for him and also purchased a gun from him. Petra testified that Stolz came to her house on the day of the 21st around 4:30 to 5:00 p.m. She stated that he was acting "totally different," and that he had come to purchase a pound of marijuana. When Petra refused, stating that she had changed and wanted to protect her little boy, Stolz became angry, brought out some marijuana of his own, and began rolling a joint. She asked him to leave when her little boy came into the room, and he angrily did so. Petra testified that about an hour after Stolz left her home she noticed police cars and ambulances going by her home, toward the Rogerses' home.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION IN LIMINE TO PROHIBIT ALL MENTION OF THE CONVICTION OF A STATE'S WITNESS.

¶8. The State filed a motion in limine in which it requested the court to prohibit any mention of the convictions of its witness, Arthur Danny "Doc" Johnson. It was granted, and Rogers asserts that this motion violated his right to confront witnesses against him as set forth in the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution.

¶9. Mississippi Rule of Evidence 609(a) states the rule relevant to this matter as follows:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

¶10. Johnson was currently serving a sentence for a drug conviction, and because of this rule, Rogers intended to question him about this conviction when he testified.[2] Rogers relies on *Young v. State*, 731 So. 2d 1145, 1151 (Miss. 1999), stating that the prejudicial effect of the evidence is not relevant to this matter because Johnson is only a witness, and not a party; and therefore, his testimony cannot be prejudiced by the introduction of this evidence. In *Young*, we held that it was an abuse of discretion for the trial judge to have excluded evidence of the witness's prior convictions under M.R.E. 609, because the witness was not a party to the case, and any prejudice to him was irrelevant. *Id.* at 1151. We should note that in *White v. State*, we followed *Young* by reversing White's conviction in the lower court and remanding for a new trial in order to allow for impeachment purposes the introduction of evidence of prior convictions of the State's chief witness. *White v. State*, 785 So. 2d 1059, 1063 (Miss. 2001). The matter before us is distinguishable from *Young* and *White*. The State's key witness in *Young* denied he had ever been convicted of a felony during the cross-examination. Johnson did not deny that he had used drugs and drank alcohol the night before and the day of the shooting. Further, Jessie testified that Johnson had been drinking beer and using crystal methamphetamine the night before the shooting. Johnson testified that he had not used the crystal meth, but that he had been drinking and "smoking pot" the previous night. He also testified that he drank five to six beers the day of the shooting. Terry testified that he, Jessie, and Johnson had been, "shooting crystal methamphetamine, smoking marijuana, eating Valiums, and they were drinking." Rogers's counsel also presented the use of drugs by Jessie, Johnson, and Terry to the jury during closing arguments. Although there may have been error in not allowing Rogers to introduce evidence of Johnson's prior convictions for impeachment, any such error is harmless since Rogers was able to use the testimony of Johnson and other witnesses to show Johnson's involvement with and use of drugs.

¶11. In a similar case, *Hobson v. State*, 730 So. 2d 20, 25-26 (Miss. 1998), we found that the trial court's error in not allowing a witness to be questioned about his prior felony convictions to be harmless error when the witness was questioned extensively about his drug use. The trial court did err by not allowing Rogers to question Johnson, since no prejudicial effect may be had by a witness who is not a party to the case. However, we find this error by the trial court to be harmless.

## II. WHETHER ROGERS FAILED TO RECEIVE A FAIR TRIAL DUE TO THE STATE'S IMPROPER REMARKS DURING ITS CLOSING ARGUMENTS.

¶12. Rogers claims that during the closing arguments, the State made improper statements regarding the weapon that were unsupported by the record during trial. Rogers asserts that following statements to the jury were error.[3]

By Mr. Geddie: [L]et me show you something. This is the weapon. It's State's Exhibit No. 15. You can examine it yourself to see that it's not loaded. I want to show you something about this weapon.

Mr. Weddle: Your Honor, I'm gonna object to this. May we approach?

The Court: No, sir. Objection overruled.

By Mr. Geddie: I want to show you something about this weapon. This weapon has the hammer back and I can't make it go off by accidentally waiving it about, but I can make it go off by pulling the trigger. Now, you're gonna have this weapon back in the jury room with you. And I want you to pull the trigger-the hammer back. And when you pull it back just a little bit, there's a space right here. You heard the click or maybe you didn't. You may have heard that click. That's when it goes on safe. You pull it back a little bit, it leave a little bit of space-

Mr. Weddle: Your Honor, I renew my objection. There's been no expert testimony with regard to this weapon.

The Court: Objection overruled.

By Mr. Geddie: It can't hit the firing pin, it won't go when you pull the trigger, it won't go when you shake it about. You pull it back a little farther and it hits the same safety. You pull it back farther, it locks open, it's on safe. You pull it back this way, it won't go off until you pull the trigger. This weapon, when you examine it yourself, will prove that the defendant was not telling you the truth when he said he pulled it back and it accidentally went off. It just won't work. Try it for yourself. You'll have it there. That's why you're able to take these exhibits back to the back.

¶13. Rogers asserts on appeal that no expert testimony was given about the weapon, and the statements during the State's closing arguments were inflammatory and constitute reversible error.

¶14. The trial court gave Instruction C-1 to the jurors, which stated in relevant part,

[A]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any argument, statement or remark having no basis in the evidence should be disregarded by you....The evidence which you are to consider consists of the testimony and statements of the witnesses and the exhibits offered and received. You are also permitted to draw such reasonable inference from the evidence as seems justified in light of your own experience.

¶15. While attorneys are afforded wide latitude in arguing their cases to the jury, they are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000) (citing *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995)). The purpose of a closing argument is to fairly sum up the evidence. The State should point out those facts upon which the prosecution contends a verdict of guilty would be proper. *Clemons v. State*, 320 So. 2d 368, 370 (Miss.1975). The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts. *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998) (collecting authorities). Counsel "cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudices of men by injecting prejudices not contained in some source of the evidence."*Nelms & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817, 821 (1930); *see also Sheppard*, 777 So. 2d at 661.

¶16. The prosecutor in this matter made comments to the jury about an item that had been introduced into evidence. Rogers testified that after the disturbance between Johnson and Stolz that "[I] reached around and got my gun....And when I was coming around, trying to back the hammer on it, my thumb slipped or the gun slipped or something slipped in my hand and 'bam.'" Rogers testified that the gun had a trigger and a hammer and that he pulled the hammer back on the gun so that no one could take the gun from him. Rogers asserts that he did not intend to fire the gun, but that he wanted to protect himself and his mother and to get everyone else out of the house. The prosecutor simply described certain mechanics of the gun to the jury and made inferences from the testimony of Rogers. The State's comments about the gun that was in evidence were not improper and did not prejudice the defendant. In addition, Instruction C-1 given to the jury should safeguard against any prejudicial effect the prosecutor's statements might have had upon the jury. *See Ormond v. State*, 599 So. 2d 951, 961 (Miss. 1992).

### III. WHETHER ROGERS WAS PREJUDICED BY THE TRIAL COURT'S GRANTING THE STATE'S MOTION IN LIMINE TO PROHIBIT ALL MENTION OF JESSIE JOHNSON'S CHARGE OF CAPITAL MURDER.

¶17. Prior to trial, the State moved in limine to prohibit any mention of pending criminal charges against its witness Jessie Johnson. This motion was granted over defense counsel's objections. Rogers asserts that the granting of this motion denied him his right under the confrontation clause to cross-examine witnesses testifying against him. *See* U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

¶18. Rogers relies on *Hall v. State*, 476 So. 2d 26, 28 (Miss. 1985), where we reversed and remanded the case for a new trial when the trial court did not allow the defendant to cross-examine two of the State's key witnesses, who were related as brother and sister, regarding their pending charges. We held that even though there was no evidence of a bargain with the State, "it would be naive to suppose that the absence of a formal agreement with the prosecution precluded such an expectation." *Id.*

¶19. "[I]nquiry into possible promises of leniency by the state and the disposition of criminal charges pending against the state's witnesses are proper areas for interrogation." *Hill v. State*, 512 So. 2d 883, 885 (Miss. 1987) (citations omitted.) However, a violation of the confrontation clause can be subjected to harmless error review. *Earl v. State*, 672 So. 2d 1240, 1243 (Miss. 1996) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L. Ed.2d 674 (1985)).

¶20. In this matter, Rogers was allowed to call Jessie to the stand and question him about whether he had any criminal charges pending against him, and Jessie answered that he did. Jessie testified that he was not promised any leniency from the State for his testimony. Rogers next called Jessie's attorney, Wayne Housley ("Housley"), to the stand, and he testified that because of Jessie's cooperation and testimony in this matter, "efforts were made to negotiate a possible plea" with the State. Housley further testified that these efforts were rebuffed by the State, which stated that it only desired Jessie's cooperation and testimony in this case. Housley stated that he discussed this with his client, and Jessie decided to testify anyway.

¶21. Furthermore, Rogers's counsel was allowed to make the following closing argument to the jury over the State's objection.

> By Mr. Weddle: Now, does Jessie Johnson have any reason to lie on the stand? They submit to you that he does not. Yet, he came in here this morning and admitted to you that he had a criminal charge pending in this county, in this court, this very court. Now, while they say there were no promises

made, it was clear that if Jessie Johnson testified in this case and cooperated in this case--

Mr. Geddie: Objection, Your Honor. There's no proof of this. It's not clear.

The Court: Objection overruled, Counsel. You may proceed.

By Mr. Weddle: That if he cooperated with officials and testified in this case, that either the State or his own attorney would inform the judge sitting on this case at sentencing or at whatever appropriate time that he did so. That should be a factor in whether or not you believe Jessie Johnson. They would have you believe that he has no reason to lie when he gets up here on the witness stand, yet he does, to help himself.

¶22. It is clear from the record that Rogers had ample opportunity to question Jessie about his motives for testifying and had ample opportunity to impeach Jessie's testimony before the jury. Rogers does not appear to have mentioned what type of charges were pending against Jessie, but he was allowed to thoroughly question Jessie and Jessie's attorney concerning the pending charges and any possible motivation behind Jessie's testimony. For the reasons discussed above, we hold that the trial court did not commit reversible error in granting the State's motion in limine.

## IV. WHETHER THE TRIAL COURT ERRED BY REFUSING ROGERS' PROPOSED JURY INSTRUCTION D-6A, WHICH INSTRUCTED THE JURY ON MALICE AFORETHOUGHT.

¶23. Rogers further asserts that the trial court erred by refusing jury instruction D-6A which, according to his brief, states as follows:

The Court instructs the jury that to prove the defendant acted with malice aforethought, the prosecution must prove beyond a reasonable doubt that the defendant acted with premeditation and deliberation.

Deliberation requires that an individual under the same circumstances as James Rogers, as shown by the evidence in this case, give consideration to the intent to kill. There is no prescribed length of time for deliberation.

However, instruction D-6A does not appear anywhere in the record. Neither is there another jury instruction which includes this language. This omission was addressed by the State, but Rogers did not address it in his rebuttal brief.

¶24. This issue is not properly before the Court. We cannot review the bare assertions in the parties' briefs, but must look to the record. *See Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987); *Harris v. State*, 386 So. 2d 393, 396 (Miss. 1980). This issue is without merit.

## V. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶25. Rogers asserts that he is not guilty of murder because the State failed to prove the malice and deliberate design elements of murder and because he acted in self-defense. The State counters that this is essentially a jury argument and not appropriate in this forum. The verdict is not against the overwhelming

weight of the evidence, and therefore, the trial court should be affirmed.

¶26. An assertion that the verdict was against the overwhelming weight of the evidence is essentially an allegation that the trial judge erred in overruling Rogers's motion for a new trial. *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987) (citing *Gray v. State*, 487 So.2d 1304, 1311 (Miss.1986)). A motion for a new trial is within the sound discretion of the trial judge, who may grant a new trial if the verdict is contrary to the law or the weight of the evidence or is required in the interest of justice. *Wetz*, 503 So. 2d at 812 (citing Rule 5.16, Miss. Unif. Crim. R. Cir. Ct. Prac.; *Van Buren v. State*, 498 So.2d 1224, 1228 (Miss.1986); *Weeks v. State*, 493 So.2d 1280, 1283 (Miss. 1986); *Gray*, 487 So.2d at 1311; *Malone v. State*, 486 So.2d 360, 366 (Miss.1986)).

¶27. In determining whether the verdict was against the overwhelming weight of the evidence, we must accept as true that evidence which supports the verdict. Reversal will be had only when we are convinced that the trial court abused its discretion in denying the motion. *Morris v. State*, 777 So. 2d 16, 22 (Miss. 2000) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997); *Jackson v. State*, 689 So. 2d 760, 766 (Miss. 1997)). We will not order a new trial unless we are convinced the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. *Austin v. State*, 784 So. 2d 186, 196 (Miss. 2001) (citing *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)).

> [O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*Austin*, 784 So. 2d at 197 (quoting *Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991)).

¶28. It is undisputed in this case who shot and killed Stolz. Rogers does not deny that he fired the shot that killed Stolz, but he does deny his intent, stating that it was an accident. His mother corroborated his testimony. On the other hand, Jessie and Johnson testified that Rogers deliberately shot Stolz. Other witnesses testified to Stolz's nature and demeanor on the day of the shooting.

¶29. Jessie testified on direct examination that Rogers shot Stolz "right here under the neck," but on cross-examination, he testified that he could not remember exactly where Rogers had aimed the gun and did not know if the gun touched Stolz's skin or not. The State's expert witness, Dr. Steven Hayne, testified that the wound indicated that, "the weapon was fired at a distance of greater than approximately two feet from the end of the muzzle to the entrance of the gunshot wound," and that the gun could not have been within an inch of Stolz's skin when it was fired. Dr. Hayne also testified that his examination revealed traces of an anti-depressant, amitriptyline, in Stolz's body. Dr. Hayne testified that drowsiness and stupor were among the side effects of this drug.

¶30. Rogers testified that he had only seen Stolz once before when Johnson brought him to his house to try to sell jewelry to his mother. On the other hand, Johnson testified that he knew Stolz from the vinyl business, had drunk a few beers with him, and that the two had sold marijuana to each other a few months before the shooting occurred.

¶31. This boils down to a factual dispute that the jury was employed to resolve. The jury was presented

with all this information and found Rogers to be guilty. As stated in *Austin*, *supra*, we are not at liberty to disturb the jury's verdict, unless taking the evidence in the light most favorable to the verdict, we can conclude that no reasonable and fair-minded jurors could find Rogers guilty. We cannot in this case.

## CONCLUSION

¶32. We find only harmless error with respect to the trial court's prohibiting any mention of the convictions of witness Arthur Danny "Doc" Johnson and no error with respect to all other issues raised by Rogers. Therefore, we affirm the judgment of the trial court.

¶33. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, COBB , DIAZ AND EASLEY, JJ., CONCUR. SMITH, J., CONCURS IN RESULT ONLY.**

1. In the transcript of the case, Rogers is referred to as "Rodgers."

2. It is not clear from the record what Johnson's conviction and sentence actually were. One of the assistant district attorneys, Geddie, stated that he thought Johnson had pled guilty to possession or possession with intent. Geddie was not certain of which crime was the basis for Johnson's conviction. Geddie stated that he thought Johnson had been placed on house arrest, had violated his probation in some way, and was therefore, sent to the penitentiary. The defense counsel did not correct or clarify the above information provided by the State.

3. Geddie represented the State in this matter, and Weddle represented the appellant, Rogers.