909 So.2d 757 (2005)
Jimmy Dale KEYS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00795-COA.
Court of Appeals of Mississippi.
August 23, 2005.
*759 Austin R. Nimocks, Biloxi, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On May 13, 2003, a jury in the Harrison County Circuit Court found Jimmy Dale Keys guilty of murder.[1] Keys was subsequently sentenced to life in prison, to be served in the custody of the Mississippi Department of Corrections. After filing a motion for a new trial, a hearing was held on March 15, 2004, at which time the trial court entered an order denying Keys a new trial. Aggrieved, Keys now appeals to this Court asserting the following issues: (1) the trial court erred in failing to remove certain veniremen for cause when grounds for removal existed; (2) the trial court erred in various testimonial and evidentiary rulings; (3) the trial court erred in failing to grant his motion for a new trial because the verdict was against the overwhelming weight of the evidence; and (4) the cumulative errors committed by the trial court unduly prejudiced him, resulting in an unfair trial.

FACTS
¶ 2. On August 5, 1996, Fred Hovermale drove into a local park in Biloxi in an effort to purchase some cocaine. He approached Susan Shelby, but she did not possess any cocaine. However, Shelby offered to find someone to sell cocaine to Hovermale. Shelby approached a man later identified as Jimmy Dale Keys, who provided Shelby with the cocaine. As Shelby approached Hovermale's car with the cocaine, she noticed that Keys was following her in his car. Actually, Litmaine Magee was driving Keys's car, a gold Mitsubishi Galant with a license plate which said "Jimmy K." Keys told Magee that "The guy got my money" and "Let's go get him."
¶ 3. Once Hovermale saw Keys approaching, Hovermale drove away. Shelby was able to jump into Hovermale's car as he drove away. Hovermale drove to another area in the park, gave Shelby money for the cocaine, and let Shelby out of the car. Magee and Keys pulled up next to Hovermale's car. Magee testified that he saw Keys exit the car, heard Keys argue with Hovermale, heard shots, and saw Keys with a gun in his hand. Hovermale was found slumped over the steering wheel. An autopsy revealed that Hovermale died as the result of gun shot wounds *760 to the chest. Keys was later arrested for Hovermale's murder.

DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN FAILING TO REMOVE CERTAIN VENIREMEN FOR CAUSE WHEN GROUNDS FOR REMOVAL EXISTED?
¶ 4. In his first issue, Keys argues that the trial court erred in failing to remove certain veniremen for cause when grounds for removal existed. The standard of review of the decision to grant or deny a challenge for cause is abuse of discretion. Sewell v. State, 721 So.2d 129(¶ 29) (Miss.1998). Although the trial court did not allow Keys to strike Jurors Rosetti and Guice for cause, Keys ultimately struck both of them by peremptory challenge. During voir dire, Rosetti informed the court that he thought he could be impartial even though his father was a policeman in Biloxi for almost thirty years. Although Rosetti wavered in a few of his answers, the trial court, observing Rosetti's demeanor, denied Keys's challenge for cause. Guice informed the court, outside the presence of the jury panel, that although she had been the victim of a violent rape at gunpoint, she could put aside her previous experience in order to serve on the jury. The trial court denied Keys's challenge for cause against Guice.
¶ 5. The supreme court has held that "no reversible error results when the trial court fails to sustain a challenge for cause, and the juror(s) at issue is ultimately excused with a peremptory challenge." Sewell, 721 So.2d at (¶ 28); see also Holland v. State, 705 So.2d 307 (¶¶ 112-13) (Miss. 1997). Both Rosetti and Guice were excused by peremptory challenge; thus, we find no reversible error committed by the trial court.

II. DID THE TRIAL COURT ERR IN VARIOUS TESTIMONIAL AND EVIDENTIARY RULINGS?
¶ 6. In his second issue, Keys argues that the trial court erred in various testimonial and evidentiary rulings. The admission of evidence is within the discretion of the trial judge. Parker v. State, 606 So.2d 1132, 1137 (Miss.1992). Keys argues that the trial court erred in failing to allow the impeachment of Susan Shelby; that the trial court erred in allowing into evidence a witness identification from a photographic line-up when the witness knew two of the individuals in the lineup; and that the trial court erred in failing to grant a mistrial when a detective made an improper remark concerning prior bad acts of Keys. We will examine each ruling separately.

A. Impeachment of Susan Shelby
¶ 7. Keys argues that he should have been allowed to impeach the State's witness, Shelby, with a prior felony conviction pursuant to Mississippi Rule of Evidence 609(a)(1). Rule 609(a)(1) states the following:
(a) General Rule. For the purpose of attacking the credibility of a witness, (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party....
¶ 8. Shelby was convicted of possession of cocaine at some time after the murder of Hovermale. Keys's attorney stated that, although he did not have the exact *761 date of Shelby's drug conviction, it occurred sometime after Keys's first trial in December 1997. According to the record, the trial court performed a balancing test pursuant to Peterson v. State, 518 So.2d 632 (Miss.1987), to determine if the probative value of the conviction overcame the presumed prejudicial effect to Shelby. The trial court ruled, "It is the Court's opinion that the probative value is not outweighed by the prejudicial effect and that a subsequent conviction to the time in which she gave her statement is inadmissible for the purposes of attacking her credibility." The trial court further stated that if Shelby testified contrary to her prior statement given to the police, then Keys could renew his motion to impeach her with a prior inconsistent statement.
¶ 9. The supreme court has found that any prejudicial effect of a witness's prior conviction is irrelevant if the witness is not a party. See White v. State, 785 So.2d 1059 (Miss.2001); Young v. State, 731 So.2d 1145 (Miss.1999). In both White and Young the court reversed each defendant's conviction, remanding for a new trial in order to allow for impeachment purposes the introduction of the prior convictions of the State's chief witness. However, the court in Rogers v. State, 796 So.2d 1022 (Miss.2001), found that Rogers was distinguishable from both White and Young. Rogers, 796 So.2d at (¶ 10). In Young, the State's witness, during cross-examination, denied he had ever been convicted of a felony. Young, 731 So.2d at (¶ 30). In Rogers, the State's chief witness, Johnson, who was serving a sentence for a drug conviction at the time of the trial, testified as to his drug use. The court found any error in failing to allow the introduction of Johnson's prior conviction to be harmless "since Rogers was able to use the testimony of Johnson and other witnesses to show Johnson's involvement with and use of drugs." Rogers, 796 So.2d at (¶ 10); see also Hobson v. State, 730 So.2d 20(¶ 19) (Miss.1998).
¶ 10. As in Rogers, we have a similar situation in the case at bar. Shelby testified to the following concerning her drug use: she was performing the drug buy for Hovermale; in return, she would receive a piece of the crack; she had been a drug user for a long time; she admitted to having a drug habit; she was familiar with the set-up in drug buys, knowing where to look for the police; and she admitted that she had been selling crack in the park for years. From reading the record, it is clear that the jury was well aware of Shelby's drug problems. Thus, we find that failing to allow Keys to question Shelby about her drug conviction was harmless error.

B. Photographic line-up
¶ 11. Keys argues that the photographic line-up was tainted because Shelby knew two of the six men in the photo array. Keys urges us to state that a line-up of only four photographs is an "impermissible minimum." "A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive." York v. State, 413 So.2d 1372, 1383 (Miss.1982). Keys does not argue that his picture was singled out or markedly different from the other photos nor does he argue that the police made any statements to direct Shelby's attention to Keys's photo. Furthermore, we are not certain when exactly Shelby told the authorities that she knew two men in the line-up. The policeman who showed Shelby the pictures did not testify that Shelby informed him that she knew two men in the line-up. According to the record, the photographic line-up was proper and Shelby *762 did not hesitate in identifying Keys. We find no error here.

C. Denial of a Mistrial
¶ 12. During the trial, the State called Warren Newman, a Biloxi police officer, who was questioned on how he compiled the photo array shown to Shelby. The exchange was as follows:
State: If you would, start with, how did you come to develop the particular photographs? How did you get the particular photographs?
Newman: The photographs were obtained from what we call an IDMO file, identification mode of operation file, that's maintained by police departments across the nation where suspects are categorized by age, race, height, weight
Carlisle: Judge, at this time
Newman:any physical abnormalities they would have.
Carlisle:I'd like to make a motion outside the presence of the jury.
¶ 13. Keys then made a motion for a mistrial stating that Officer Newman's statement made it clear to the jury that he had a prior criminal history. After reviewing Newman's response concerning the photographs, the trial court denied the mistrial. The origin of the photographs was not mentioned again during Newman's testimony.
¶ 14. The standard of review for denial of a motion for a mistrial is abuse of discretion. Pulphus v. State, 782 So.2d 1220(¶ 15) (Miss.2001). In his brief, Keys tries to argue that this statement by Officer Newman amounts to an admission of prior bad acts pursuant to Mississippi Rule of Evidence 404(b). We find Rule 404(b) to be inapplicable as there was no evidence in front of the jury that Keys had committed other crimes. Furthermore, the jury could have inferred that the police had already taken a picture of Keys and placed it with the other photos taken from the IDMO file. We cannot find that the trial court erred in failing to grant a mistrial.

III. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 15. In his third issue, Keys argues that the jury verdict was against the overwhelming weight of the evidence and that a new trial should have been granted. We look to our standard of review in determining whether the jury verdict was against the overwhelming weight of the evidence:
[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77(¶ 14) (Miss. 2001).
¶ 16. Keys bases his argument on the lack of credibility of the two witnesses for the State, Shelby and Magee. Keys states that Shelby was a known drug user and never actually saw Keys with the murder weapon. However, Shelby placed Keys at the park and testified explicitly that Keys came up to Hovermale's car during the drug buy.
¶ 17. Keys states that Magee was drinking at the time of the shooting; that his story was inconsistent; and that Magee was a dishonest person. However, Magee *763 testified that he was driving Keys's car with Keys in the passenger seat; that they pulled up to Hovermale's car; that Keys exited the car and argued with Hovermale; that he heard shots; and that he saw a gun in Keys's hand.
¶ 18. It is the jury's exclusive role to weigh the credibility of witnesses and to resolve conflicts in the evidence. Edwards v. State, 797 So.2d 1049(¶ 26) (Miss.Ct.App. 2001). The jury clearly believed the State's version of the events and, from the available evidence, we cannot find that to let the verdict stand would sanction an unconscionable injustice.

IV. DID THE CUMULATIVE ERRORS COMMITTED BY THE TRIAL COURT UNDULY PREJUDICE KEYS AND RESULT IN AN UNFAIR TRIAL?
¶ 19. In his last issue, Keys argues that the cumulative errors committed by the trial court unduly prejudiced him, resulting in an unfair trial. Although we found harmless error in regards to issue II-A, we found no other errors; thus, we can find no cumulative error that would necessitate a reversal.
¶ 20. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] This is Keys's second appeal before this Court. After his first appeal in 1998, we found reversible error and remanded for a new trial. See Keys v. State, 739 So.2d 455 (Miss.Ct.App. 1999).