LEE, C.J.,
for the Court:
¶ 1. A jury in the Coahoma County Circuit Court found Crystal Clay guilty of aggravated assault. The trial court sentenced Clay to serve three years in the custody of the Mississippi Department of Corrections, with two years of post-release supervision. Clay was also ordered to pay $150 in restitution. Clay filed a post-trial motion, which the trial court denied. Clay now appeals, asserting that the trial court erred in (1) allowing testimony concerning a witness’s prior conviction, and (2) admitting certain Facebook postings into evidence.
FACTS
¶2. On September 4, 2012, Clay and Marquita Thomas engaged in a fight at Thomas’s apartment in Clarksdale, Mississippi. Clay had been to Thomas’s apartment the day before, where she had learned Thomas and DiMarkus Williams were in a relationship. Clay and Williams had previously been involved in a physical relationship.
¶ 3. On the day of the fight, Clay showed up at Thomas’s apartment, but Thomas was not home at the time. Williams, Shorisa Mathis, and Victor Moore were at the apartment. All three testified that Clay was angry and intended to fight Thomas. Clay left but returned later that day. The women began yelling at each other. Thomas pushed Clay’s hands out of her face, which caused the fight to turn physical. At one point Clay pulled out a box cutter and began slashing at Thomas. Clay cut Thomas’s finger and her left arm. Thomas grabbed a chair and hit Clay in the shoulder with it. Williams then broke up the fight. Clay left, and Thomas went to the hospital, where she received twenty-eight staples in her arm.
¶ 4. The following Monday, Thomas pressed charges against Clay. During the investigation, Officer Norman Starks, an investigator with the Clarksdale Police Department, accessed Clay’s Facebook'pro-file. Officer Starks printed a copy of Clay’s comments, which were later introduced into evidence at trial.
¶ 5. Cedric McCray, who had accompanied Clay to Thomas’s apartment and witnessed the fight, testified Clay used the box cutter in self-defense after Thomas hit her with the chair.
DISCUSSION
I. PRIOR CONVICTION OF WITNESS
¶ 6. Clay contends the trial court should have excluded evidence of McCray’s prior conviction. McCray had been convicted of misdemeanor false information on June 7, 2001. Prior to McCray’s testimony, Clay asked that any evidence of McCray’s prior conviction be excluded. We review the trial court’s decision to allow the impeachment evidence under our familiar abuse-of-discretion standard. Strickland v. State, 980 So.2d 908, 919 (¶ 18) (Miss.2008).
¶ 7. Mississippi Rule of Evidence 609 governs the impeachment of witnesses by evidence of a prior conviction. Rule 609(a)(2) states: “[E]vidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.” The rule further states that “[ejvidenee of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction ... *1020 unless'the court determines ... that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect.” M.R.E. 609(b).
¶ 8. However, if the witness to be impeached through the admission of prior convictions is not a party, any prejudice to that non-party witness is irrelevant, as a non-party can suffer no prejudice. Young v. State, 731 So.2d 1145, 1151 (¶ 39) (Miss.1999). “Even where the non-party witness being impeached is one party’s primary or sole witness, evidence of a pri- or conviction of that witness must be admitted if the requirements of Rule 609(a) ... are met.” Moore v. State, 787 So.2d 1282, 1290 (¶ 26) (Miss.2001).
¶ 9. In this instance, the trial court determined McCray’s crime of false information was properly admitted pursuant to the requirements of Rule 609. We find no abuse of discretion by the trial court in allowing evidence of McCray’s prior conviction to be admitted. This issue is without merit.
II. FACEBOOK MESSAGES
¶ 10. In her other issue on appeal, Clay contends the trial court erred in allowing certain Facebook postings into evidence. During Officer Starks’s testimony, he stated that during his investigation, he accessed Clay’s Facebook page through his own Facebook page. After reading comments made by Clay on her Facebook page and speaking with the other witnesses at Thomas’s apartment, Officer Starks charged Clay with aggravated assault. Officer Starks testified he printed out these Facebook comments on September 4, 2012, a few days after the fight. The State attempted to introduce them into evidence, and Clay objected on the ground that the State failed to lay a proper foundation.
¶ 11. “The standard of review regarding admission or exclusion of evidence is abuse of discretion.” Newell v. State, 49 So.3d 66, 71 (¶ 9) (Miss.2010). This Court will not disturb the trial court’s evidentiary ruling “unless the error adversely affects a substantial right of a party.” Id. (quoting Mingo v. State, 944 So.2d 18, 28 (¶ 23) (Miss.2006)). Mississippi Rule of Evidence 901(a) states that “[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” One means to authenticate evidence is through the testimony of a witness with knowledge “that a matter is what it is claimed to be.” M.R.E. 901(b)(1).
¶ 12. In Smith v. State, a case of first impression, the Mississippi Supreme Court recently discussed the unique issues posed in attempting to authenticate social media such as Facebook postings, noting that “something more than simply a name and [a] small, blurry photograph purporting to be Smith is needed to identify the Face-book account as his in the first place.” Smith v. State, 136 So.3d 424, 433 (¶20) (Miss.2014). The supreme court found that this “something more” could be as follows:
For example, the purported sender admits authorship, the purported sender is seen composing the communication, business records of an internet service provider or cell phone company show that the communication originated from the purported sender’s personal computer or cell phone under circumstances in which it is reasonable to believe that only the purported sender would have access to the computer or cell phone, the communication contains information that only the purported sender could be expected to know, the purported sender *1021 responds to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication, or other circumstances peculiar to the particular case may suffice to establish a prima facie showing of authenticity-
Id. at (¶ 21) (citations omitted). The supreme court found that the State failed to make a prima facie case that the Facebook messages were from Smith or that the Facebook profile belonged to Smith. Id. at 434 (¶ 24). There was also no testimony “regarding the security of or access to Smith’s Facebook account....” Id. at 435 (¶ 25). The supreme court determined the trial court abused its discretion in admitting the Facebook messages. Id. at (¶ 26). But the supreme court determined the error was harmless given the overwhelming evidence of Smith’s guilt. Id. at (¶ 28).
¶ 13. In this instance, we find the State has failed to make a prima facie case that the Facebook comments were from Clay. Although some of the postings mention a fight and the name Marquita, there was no testimony that the photograph in the Facebook profile was that of Clay. The profile states the account belongs to a “Crystal Clear,” who was born on March 4; graduated from Clarksdale High School; speaks Japanese, Chinese, and English; and lives in Paris, France. No personal information regarding Clay was elicited to determine whether the profile was hers. Furthermore, Clay did not admit authorship of these postings, nor was there testimony she was seen composing these comments. The only testimony concerning Clay’s Facebook usage occurred prior to the altercation with Thomas, which only established that Clay had used Thomas’s computer in the past to log in to her Facebook account. This testimony also highlights concerns regarding the susceptibility of Clay’s Facebook account to a potential security breach.
¶ 14. We find the trial court abused its discretion in admitting the Fa-cebook messages purporting to be from Clay’s account. Like the Court in Smith, we now must determine whether admitting this evidence was harmless. Id. at (¶ 26). “We do not reverse a conviction for an erroneous evidentiary ruling unless the error adversely affects a substantial right of a party, or in other words, unless the ruling prejudiced the accused.” Id. at (¶ 27) (internal quotations omitted). The conviction will not be reversed “where it is clear beyond a reasonable doubt that the error did not contribute to the verdict.” Id. (citation omitted).'
¶ 15. In this instance, there were three ■witnesses who testified Clay arrived at Thomas’s apartment angry and intending to fight Thomas. These witnesses stated that once the fight between the two women became physical, Clay stabbed Thomas with a box cutter, after which Thomas picked up the chair to defend herself. Given the evidence of Clay’s guilt, we find the admission of the Facebook postings was harmless.
¶ 16. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY TWO YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, AND TO PAY $150 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*1022 IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.