# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00636-COA

**KEYSHANWDRA DAVIS A/K/A**                          **APPELLANT**
**KEYSHAWNDRA DAVIS A/K/A KEKE A/K/A**
**KEYSHAWANDRA DAVIS A/K/A**
**KEYSHAWNDRA KEKE DAVIS**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2023 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/16/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Keyshawndra Davis was convicted of first-degree murder and shooting into a motor vehicle. The Tunica County Circuit Court sentenced her to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for the murder conviction and to serve a term of five years in custody for the shooting conviction, set to be served consecutively. Davis moved for judgment notwithstanding the verdict (JNOV) or for a new trial, which the trial court denied. Aggrieved, Davis appeals. Finding no error, we affirm Davis's convictions and sentences and the trial court's order denying her post-trial motion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Davis and Tyangela Carlisle were in a romantic relationship and lived in an apartment together, worked together, and shared one vehicle. On June 1, 2021, Davis and Carlisle got into a dispute at work, and Davis left in their shared vehicle, leaving Carlisle at work without a ride. Carlisle's mother Tasha and sister Amiya picked Carlisle up from work around 8:00 p.m. and took her to her apartment, but Carlisle was locked out because she did not have her own separate key, and Davis was not home. A few hours later, Amiya drove Carlisle and their friend Demetrius Calhoun to a Valero gas station in Tunica. Carlisle was sitting in the passenger seat, and Calhoun was in the back seat. When they arrived, they saw Davis standing outside the gas station. Davis came up to Amiya's vehicle, and Carlisle asked Davis for the apartment key. Davis then pulled out a firearm and started shooting into the vehicle at Carlisle. Amiya testified she heard Davis laughing as she was shooting into the vehicle. Amiya drove off and went straight to the sheriff's department for help, but Carlisle had suffered gunshot wounds to her face and chest and died before she could receive medical attention.

¶3.     Davis testified she fled to Memphis, Tennessee, threw the gun in the river, and waited four days before turning herself in to police. At trial, Davis admitted that she shot and killed Carlisle but claimed self-defense, alleging that she saw a gun before she started firing. But Amiya testified that she, Carlisle, and Calhoun were unarmed and that none of them threatened Davis. The shooting was captured on the gas station's surveillance footage, and bullet casings were recovered at the crime scene that matched projectiles retrieved from

2

Carlisle's body and Amiya's car.

¶4.     On February 2, 2022, a Tunica County grand jury indicted Davis for first-degree murder (Count I), two counts of attempted aggravated assault (Counts II and III), and shooting into a motor vehicle (Count IV), with a firearm enhancement. On a motion the State made during the course of Davis's trial in May 2023, the court dismissed Counts II and III. On May 3, 2023, the jury returned its verdicts finding Davis guilty of the first-degree murder of Carlisle and shooting into a motor vehicle. On May 5, 2023, the trial court sentenced Davis to life imprisonment for Count I and to serve five years for Count IV, consecutively. Davis subsequently filed her post-trial motion requesting a JNOV or, alternatively, a new trial based on alleged errors the trial court made in denying her strikes during jury selection and her objections to photographs she alleged were overly gruesome. The court denied her post-trial motion on May 24, 2023. Davis appeals the denial of her request for a new trial only as to the issue of her strikes during jury selection.

## STANDARD OF REVIEW

¶5.     "As an appellate court, our role 'is to review the trial court's decision to grant or deny a new trial for an abuse of discretion.'" *Ellison v. State*, 370 So. 3d 807, 813-14 (¶27) (Miss. Ct. App. 2023) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)). Regarding jury issues, specifically, "[t]he selection of jurors is a 'judgment call peculiarly within the province of the circuit judge, and one we will not . . . second guess [on appeal] in the absence of a record showing a clear abuse of discretion.'" *Gardner v. State*, 379 So. 3d 367, 378 (¶52) (Miss. Ct. App. 2023) (quoting *Adkins v. Sanders*, 871 So. 2d 732, 740 (¶31) (Miss.

3

2004)). We "will only reverse the trial court when [this] [C]ourt 'clearly is of the opinion that a juror was not competent.'" *Id*. (quoting *Adkins*, 871 So. 2d at 740 (¶31)).

## DISCUSSION

¶6.     Davis claims the trial court erred by failing to strike four potential jurors for cause—Jurors 4, 9, 15, and 16. She claims these four jurors admitted to having personal relationships with Carlisle and Carlisle's family and to having particularized knowledge about the facts of the case.

### *Potential Jurors*

#### A.     Juror 4

¶7.     The transcripts show Davis challenged Juror 4 for cause because the Juror had previously heard "street talk" of basic information about the killing and stated it would be uncomfortable for him to explain to his cousins (who were friends with the victim) should he vote not guilty. However, in denying the challenge, the trial judge correctly noted that Juror 4 also testified that his relatives' relationship with the victim would not inhibit his ability to be a fair and impartial juror. Further, Juror 4 confirmed that if selected for the jury, any information he previously heard would play no part in his decision on the case. He agreed to make his decision based solely on the evidence in the courtroom. After her cause challenge was denied, Davis proceeded to use a peremptory challenge to strike Juror 4. As a result, Juror 4 was not seated on the jury for her trial.

#### B.     Juror 9

¶8.     Davis challenged Juror 9 for cause on the grounds that Juror 9 had worked as an

4

investigator, previously investigated some murder cases, and indicated he would probably pay a little more attention to detail than others because of this work experience. He also acknowledged he had observed Facebook posts about the case, but he described the cursory nature of the posts and stated, "It wasn't no big details about it." When questioned further, the juror confirmed that he had not worked in law enforcement for nearly the last decade before this trial. Ultimately, he stated that neither the Facebook post nor his previous work experience would play a role in his decision-making and that he would decide based solely on the evidence in the courtroom. The trial judge denied the request to strike for cause, and Davis subsequently used a peremptory challenge to strike Juror 9 from the jury.

### C. Juror 15

¶9. According to the record, Davis challenged Juror 15 for cause on the grounds that she and the victim's mother both worked at the Horseshoe casino, she also heard "street talk" about the case, she corresponded with the mother after the victim's death, and the victim's father was her former coworker at another casino. After providing this initial information, further questioning revealed that she and the mother worked in separate departments at the casino and that Juror 15 would set aside her observation of Facebook posts about the case and make her decision solely on the evidence at trial. After she ultimately vowed that she could be fair and impartial to both sides, the trial court denied the challenge for cause. Davis proceeded to use a peremptory challenge to strike Juror 15, and Juror 15 was excused.

### D. Juror 16

¶10. The transcripts indicate Davis challenged Juror 16 for cause on the basis that during

voir dire, she stated the victim was one of her sister's best friends, would spend the night with her sister, and previously served on the same dance team with her daughter and her sister. Due to the nature of these connections, the trial judge appropriately questioned her further regarding these relationships, and she vowed that she could set them aside and base her decision solely on the evidence. She stated that she could be fair to both sides and confirmed that if the proof suggested she should vote not guilty, she could do so. After the trial judge denied the cause challenge, Davis exercised another peremptory challenge to strike Juror 16, and Juror 16 was not seated on the jury at trial.

### *Application of Law*

¶11.   "Under Mississippi law, any person not disqualified under Mississippi Code Annotated Section 13-5-1, who will make oath that he or she is impartial, is competent to sit as a juror in a criminal case." *Patton v. State*, 248 So. 3d 763, 767 (¶30) (Miss. 2018) (quoting *Archer v. State*, 986 So. 2d 951, 958 (¶30) (Miss. 2008)). "Whether a potential juror can be fair and impartial is a judicial question reserved for the trial judge and will not be disturbed unless clearly wrong." *Id*. (citing *Archer*, 986 So. 2d at 957 (¶23)). "[A] juror who may be removed on challenge for cause is one against whom a cause for challenge exists that would likely [a]ffect his competency or impartiality at trial." *Id*. (quoting *Evans v. State*, 725 So. 2d 613, 653 (Miss. 1997)). "A denial or grant of a challenge for cause is within the discretion of the court[.]" *Gardner*, 379 So. 3d at 379 (¶56). Ultimately, all four veniremembers unequivocally stated they could be fair and impartial and could set aside any prior information, "[their] relationship to one of the parties, [their] occupation, [their] past

6

experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other[.]" *Patton*, 248 So. 3d at 769 (¶37) (quoting *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)).

¶12. Furthermore, for our purposes on appeal, "before a claim related to a denial of a challenge for cause may be valid, (1) the defendant must have exhausted all of his peremptory challenges *and* (2) an incompetent juror *must be forced* by the trial court's erroneous ruling *to sit on the jury*." *Horn v. State*, 273 So. 3d 758, 765 (¶21) (Miss. Ct. App. 2018) (emphasis added) (quoting *Lomax v. State*, 220 So. 3d 211, 213 (¶7) (Miss. Ct. App. 2017)). Our supreme court has routinely noted the "rule 'that *no* reversible error results when the trial court fails to sustain a challenge for cause, *and the juror(s) at issue is ultimately excused with a peremptory challenge.*'" *Patton*, 248 So. 3d at 767 (¶30) (quoting *Sewell v. State*, 721 So. 2d 129, 135 (Miss. 1998)); *see also Keys v. State*, 909 So. 2d 757, 760 (¶5) (Miss. Ct. App. 2005); *Hill v. State*, 929 So. 2d 338, 343 (¶22) (Miss. Ct. App. 2005).

¶13. Looking at the first element, Davis must have exhausted all twelve peremptory challenges allotted. A review of the transcripts shows Davis used her second peremptory strike on Juror 4, her fourth on Juror 9, her sixth on Juror 15, and her seventh on Juror 16, but she proceeded to assert peremptory challenges to strike another five jurors (Jurors 19, 22, 24, 29, and 31). As such, Davis exhausted all twelve of her allotted peremptory challenges, therefore satisfying the first element.

¶14. Moving on to the second element, Davis is required to prove that an incompetent juror was forced to sit on the jury as a result of the trial court's denials of her challenges for cause.

Davis alleges Jurors 4, 9, 15, and 16 were each incompetent jurors, but the record undeniably shows that none of these four jurors were actually seated on the jury. When the trial court denied Davis's challenges for cause pertaining to these four jurors, she was successfully able to remove each of these four contested jurors through other means by immediately raising a peremptory challenge. Not a single one of these four people was seated on the jury; therefore, Davis's claim fails under the second element.

## CONCLUSION

¶15.   After a thorough review of the record, we find no reversible error resulted from the trial court's denial of Davis's challenges for cause to strike these jurors. Therefore, we affirm Davis's convictions and sentences and the circuit court's order denying Davis's post-trial motion.

¶16.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**